UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

JORDAN MITCHELL BLEVINS,   Case No. 18-CV-2270 (DSD/DTS)

    Plaintiff,

v.   **REPORT AND RECOMMENDATION**

TODD PEARSON; ANDY REINKE;
MARY EICHTEN; MACY TESMER;
WILL WHITE; ALEX BUNGER; and
BRIAN HOWARD,

    Defendants.

---

This matter is before the Court on review of the amended complaint[1] submitted by plaintiff Jordan Mitchell Blevins, a Minnesota state prisoner. *See* 28 U.S.C. § 1915A. For the reasons discussed below, it is recommended that this action be dismissed in its entirety.

### I. FACTUAL ALLEGATIONS

Blevins was previously an inmate at the Olmsted County Adult Detention Center. Defendant Todd Pearson, a deputy at that facility, came to learn that Blevins is homosexual and made several derogatory comments about Blevins's sexual orientation in the presence of other inmates, including specifically "How long have you been gay

---

[1] This Court previously noted deficiencies in Blevins's original pleading. *See* ECF No. 4. In response, Blevins submitted a motion to amend his complaint and a proposed amended pleading. *See* ECF Nos. 5 & 5-1. Because service has not yet been effected in this case, Blevins may amend his complaint once as a matter of course without permission of the Court. *See* Fed. R. Civ. P. 15(a)(1). Accordingly, this Court will regard the proposed amended complaint [ECF No. 5-1] as the operative pleading in this matter. Blevins's motion to amend may be denied as moot.

1

Jordan?"; "You know my beliefs say its wrong"; "[the] Bible says you go to hell"; and "[the] Bible isn't wrong you are Jordan."  Am. Compl. at 10 [ECF No. 5-1].  Another deputy, defendant Andy Reinke, also made a comment to Blevins — "who got the furniture in the divorce, you or him?" — that Blevins regarded as derogatory.  *Id.* at 6.  Blevins filed a grievance about the comments, but Pearson was allowed to keep his job, which often included work in the food-service areas.  *Id.* at 6.  In an effort to avoid Pearson and in protest against the alleged mistreatment by jail officials, Blevins went 23 days without food.  *Id.* at 6, 13.  Blevins alleges that his grievances were ultimately ignored by defendant Macy Tesmer, the jail official responsible for handling such grievances. *Id.* at 6-7.  That said, defendant Brian Howard, who is described by Blevins as "the jail administrator" and "top of the chain of command" at the jail, apologized for Pearson's comments a few weeks after they were made and ordered that Pearson no longer work around Blevins.  *Id.* at 9.

Unrelated to the above incidents, Blevins alleges that his parole agent, defendant Mary Eichten, attempted to interfere in romantic relationships between Blevins and two other individuals (a former boyfriend and Blevins's current husband).  The nature of the interference is not entirely clear from the complaint, except insofar as Eichten placed several calls to the director of the facility where Blevins was then residing asking about Blevins's relationships.  *See* Am. Compl. at 8.  Eichten also made Blevins sign a "release" before marrying his now-husband.  *Id.*  Defendant Alex Bunger, a supervising agent, is alleged by Blevins to have ignored complaints about Eichten's behavior.  *Id.* at 7.

Finally, also unrelated to the above incidents, defendant Will White, another deputy at the Olmsted County Adult Detention Center, opened legal mail that had been sent to

2

Blevins — the third time that Blevins's legal mail had been opened while incarcerated, though by all indications the first time that White had done so. *See* Am. Compl. at 7. A jail sergeant acknowledged to Blevins that White had improperly opened legal mail, "apologize[d] for our staff's error," and gave "White some training and some coaching in hopes that this does not happen again." *Id.* at 12.

## II. ANALYSIS

### A. Joinder

Blevins's claims can be grouped into three categories: (1) claims related to harassment while incarcerated at the Olmsted County Adult Detention Center; (2) claims related to alleged interference with romantic relationships by his parole officer; and (3) claims related to the opening of his legal mail. As an initial matter, it is doubtful that all three sets of claims should have been brought in a single lawsuit. Under Fed. R. Civ. P. 20(a)(2),

> Persons . . . may be joined in one action as defendants if:
>
> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>
> (B) any question of law or fact common to all defendants will arise in the action.

Seven defendants are named in the amended complaint. Four of the defendants (Pearson, Reinke, Tesmer, and Howard) relate to the first set of claims; the fifth and sixth defendants (Eichten and Bunger) relates to the second set of claims; and the seventh defendant (White) relates to the third set of claims. No question of law or fact is common among the three claims, and the "series of transactions or occurrences" related to each

3

claim are entirely separable. "[M]ultiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits . . . ." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). "[A] plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all." Charles Allen Wright, Arthur R. Miller, Mary Kay Kane, *Federal Practice & Procedure Civil 3d* § 1655.

Rule 20(a)(2) serves two purposes in prisoner litigation. First, preventing the joinder of unrelated defendants in the same action prevents the "'morass' produced by multi-claim, multi-defendants suits . . . ." *Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011) (quoting *George*, 507 F.3d at 607). Second, the Prison Litigation Reform Act requires prisoners to pay the filing fee for all civil actions (albeit in installments if proceeding *in forma pauperis* ("IFP")), and it limits the number of meritless lawsuits and appeals that a prisoner may file before eligibility for IFP status is thereafter revoked. *See George*, 507 F.3d at 607 (citing 28 U.S.C. § 1915(b), (g)). A prisoner who might otherwise be required to pay multiple filing fees for multiple lawsuits might therefore hope to avoid this obligation by combining unrelated claims against unrelated defendants into a single action—with the added hope that "a single non-frivolous claim in a blunderbuss complaint [could make] the suit as a whole non-frivolous." *Id.*

Nevertheless, despite this substantial problem of misjoinder—and because dismissal of the entire action is necessary anyway—this Court will consider the amended complaint as pleaded, with all three sets of claims. Blevins is warned, however, that future

complaints submitted in federal court must comply with Rule 20 of the Federal Rules of Civil Procedure, or Blevins will risk incurring multiple filing fees and multiple "strikes" for purposes of § 1915(g).

**B.    Standard of Review**

In reviewing whether a complaint states a claim on which relief may be granted, this Court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor.  *Aten v. Scottsdale Ins. Co.*, 511 F.3d 818, 820 (8th Cir. 2008).  Although the factual allegations in the complaint need not be detailed, they must be sufficient to "raise a right to relief above the speculative level . . . ."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The complaint must "state a claim to relief that is plausible on its face."  *Id.* at 570.  In assessing the sufficiency of the complaint, the court may disregard legal conclusions that are couched as factual allegations.  *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  Pro se complaints are to be construed liberally, but they still must allege sufficient facts to support the claims advanced.  *See Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004).

**C.    Jail Harassment Claims**

Blevins's first set of claims relate to harassment he suffered at the hands of jail officials due to his sexual orientation.  Blevins seeks relief formally under the Prison Rape Elimination Act ("PREA"), 42 U.S.C. § 15601 et seq.  "The PREA is intended to address the problem of rape in prison, authorizes grant money, and creates a commission to study the issue."  *Chinnici v. Edwards*, No. 1:07-CV-229, 2008 WL 3851294, at *3 (D. Vt. Aug. 12, 2008).  Repeatedly, however, courts have found that the PREA does not create a private right of action.  *See Krieg v. Steele*, 599 Fed. App'x 231, 232-33 (5th Cir. 2015)

(per curiam) (affirming dismissal of claim under the PREA as frivolous for lack of a private right of action); *Garcia v. MEND Medical Services*, No. 16-CV-4015 (DWF/BRT), 2017 WL 1968675, at *2 (D. Minn. Apr. 7, 2017); *LeMasters v. Fabian*, No. 09-0702 (DSD/AJB), 2009 WL 1405176, at *2 (D. Minn. May 18, 2009) (collecting cases).  Simply put, Blevins cannot seek relief directly under the PREA.

That said, use of threats or derogatory language of sufficient severity can, in some circumstances, amount to a constitutional violation actionable under 42 U.S.C. § 1983. *See Burton v. Livingston*, 791 F.2d 97, 100 (8th Cir. 1986).  The bar for such claims, however, is high.  "Verbal threats and name calling usually are not actionable under § 1983." *McDowell v. Jones*, 990 F.2d 433, 434 (8th Cir. 1993) (citing *Martin v. Sargent*, 780 F.2d 1334, 1338-39 (8th Cir. 1985)).  This is true even where the language used is discriminatory or demonstrates animus against a protected group.  *See Black Spotted Horse v. Else*, 767 F.2d 516, 517 (8th Cir. 1985); *cf. Lewis v. Jacks*, 486 F.3d 1025, 1028 (8th Cir. 2007) ("Verbal abuse by correctional officials, even the use of reprehensible racially derogatory language, is not by itself unconstitutional race discrimination unless it is pervasive or severe enough to amount to racial harassment." (quotations omitted)).  The comments from defendants Pearson and Reinke regarding Blevins's sexual orientation were reprehensible, but they were not so severe as to rise to the level of *constitutional* violations.

Blevins's remaining claims related to the use of derogatory language relate to the denial of grievances filed after that language was used.[2]  But jail officials' role in reviewing

---

[2] Blevins does not appear to be raising a claim against jail officials related to his hunger strike.  In any event, Blevins does not allege that he was ever denied *access* to food by

6

and responding to grievances, even where unsatisfactory or disappointing in some way, "is insufficient to impose liability under § 1983." *Latimer v. Smith*, No. 16-CV-4004 (MJD/DTS), 2018 WL 3979632, at *5 (D. Minn. July 20, 2018) (citing *Rowe v. Norris*, 198 Fed. App'x 579, 580 (8th Cir. 2006) (per curiam)). Accordingly, Blevins cannot seek relief under federal law for the actions of jail officials described in the amended complaint.

### D. "Interference" Claims

Blevins's next claim relates to the alleged interference by his parole agent, defendant Mary Eichten, in romantic relationships he had pursued prior to his incarceration at the Olmsted County Adult Detention Center. The claim is insufficiently pleaded, both factually and legally. In many respects, the exact nature of the alleged "interference" by Eichten is unclear and appears to be indistinguishable from the ordinary operations of parole officers in monitoring and providing assistance to their wards. Even leaving that aside, Blevins does not specify any particular legal claim for relief, and none is obvious from the face of the complaint. Without more, Blevins cannot show that Eichten has violated federal law. And Bunger's alleged failure to consider complaints regarding Eichten's activities — which themselves have not been adequately alleged to have been unlawful — cannot by itself constitute activity actionable under § 1983. *See Latimer*, 2018 WL 3979632, at *5.

### E. Legal Mail Claims

Finally, Blevins brings unspecified legal claims against defendant Will White related to the opening of his legal mail. *See* Am. Compl. at 7. The deliberate opening of

---

jail officials, and his health was monitored throughout the period at issue. *See* Am. Compl. at 13.

legal mail by jail or prison officials outside the presence of the intended recipient can sometimes constitute a violation of the inmate's constitutional rights. *See, e.g.*, *Powells v. Minnehaha County Sheriff Dep't*, 198 F.3d 711, 712 (8th Cir. 1999) (per curiam). Nevertheless, "an 'isolated incident, without any evidence of improper motive or resulting interference with [the inmate's] right to counsel or to access to the courts, does not give rise to a constitutional violation.'" *Gardner v. Howard*, 109 F.3d 427, 431 (8th Cir. 1997) (quoting *Smith v. Maschner*, 899 F.2d 940, 944 (10th Cir. 1990)). Blevins states in his amended complaint that his legal mail had been opened on three occasions by jail officials, but defendant White is claimed to have been responsible for only one of those instances. *See* Am. Compl. at 7. No concrete harm is alleged to have resulted from the incident; for example, Blevins's right to counsel and access to the courts were not impeded. There is no allegation that the error was intentional — that is, that defendant White knew he was opening legal mail only to be opened in the presence of Blevins. And jail officials took immediate action regarding the error after they learned of it. *See id.* at 12.

Even taking each of Blevins's factual allegations as true (which this Court must at this stage of the proceedings), it cannot be said that White's isolated mistake rises to the level of a constitutional violation. This final claim should therefore be dismissed.

**F.    Conclusion**

Accordingly, this Court finds that Blevins has failed to state a claim on which relief may be granted, and it is recommended that this action be summarily dismissed without prejudice pursuant to § 1915A. Blevins's application to proceed IFP may be denied should this matter be dismissed. *See* 28 U.S.C. § 1915(e)(2)(B)(ii); *Atkinson v. Bohn*, 91

F.3d 1127, 1128 (8th Cir. 1996) (per curiam).  Likewise, Blevins's motion for a jury trial may be denied as moot upon dismissal.  *See* ECF No. 12.  Blevins remains responsible for the remainder of the $350.00 statutory filing fee in this action, which must be paid in installments over time.  *See* 28 U.S.C. § 1915(b).

## RECOMMENDATION

Based on the foregoing, and on all of the files, records, and proceedings herein,

**IT IS HEREBY RECOMMENDED THAT:**

1. This action be DISMISSED WITHOUT PREJUDICE pursuant to 28 U.S.C. § 1915A.

2. The application to proceed *in forma pauperis* of plaintiff Jordan Mitchell Blevins [ECF No. 2] be DENIED.

3. Blevins's motion to amend the complaint [ECF No. 5] be DENIED AS MOOT.

4. Blevins's motion for a jury trial [ECF No. 12] be DENIED AS MOOT.

5. Blevins be made to pay the unpaid balance ($275.00) of the statutory filing fee for this action in the manner prescribed by 28 U.S.C. § 1915(b)(2), and the Clerk of Court directed to provide notice of this requirement to the authorities at the institution where Blevins is today confined.

Dated: November 30, 2018         s/David T. Schultz
                                 DAVID T. SCHULTZ
                                 United States Magistrate Judge

## **NOTICE**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).